```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
EDGAR ORTEGA,                           :
                         Petitioner,    :
                                        :    09 Civ. 5604 (DLC)
             -v-                        :
                                        :    OPINION & ORDER
WILLIAM BROWN and HON. ANDREW CUOMO,    :
                         Respondents.   :
----------------------------------------X
```

Appearances:

For petitioner:
Lloyd Epstein
Epstein & Weil
225 Broadway, Suite 1203
New York, NY 10007

For respondent:
Christopher Patrick Marinelli
New York County District Attorney's Office
1 Hogan Place
New York, NY 10013

Edgar Ortega has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction at trial on one count of murder in the second degree. Ortega is serving a sentence of twenty years to life imprisonment. Ortega argues principally that the evidence at trial was insufficient to establish that he acted with depraved indifference and that his trial counsel was ineffective when he failed to move at the conclusion of the evidence for a directed verdict on this specific ground.

1

On June 15, 2010, the Honorable Debra Freeman recommended that the petition be denied ("Report"). Ortega, who is represented by counsel, has objected to the Report. For the following reasons, the petition is denied.

BACKGROUND

The evidence at trial established that Ortega and his girlfriend Sheila Cordell had a tumultuous relationship and a history of fighting. At the time of Cordell's death, she was living with Ortega in his fourth-floor Manhattan apartment. That night the two went to dinner and bickered. They went their separate ways after dinner, with Ortega arriving home about 3:00 a.m. on May 25, 2003, and Cordell arriving at the apartment at about 4:30 a.m. By 5:00 a.m. they were engaged in a violent, loud argument that frightened neighbors and firefighters at a nearby station. Ortega was tossing Cordell around the apartment, gripping her neck, pulling her hair, and pinning her against an open window. Cordell kept screaming "let me go" and "get away from me."

In the course of the fight, Ortega pushed Cordell and she fell through the window to her death in the courtyard below. The window was 5'10" wide; its windowsill was about 2' from the floor. The window was open about 2' and had a poorly-fitted

screen that Ortega had taped to the window frame.  Cordell was 5'6" tall.

Ortega gave inconsistent statements to the police and firefighters who arrived on the scene and then to investigators during a videotaped statement provided after he had been given Miranda warnings.  Among other things, Ortega described pushing and shoving Cordell, but also said that she jumped out of the window or fell from it.  One of Ortega's friends testified that Ortega left a voicemail message for him at about 5:20 a.m. in which Ortega said "I think I killed her."

Ortega was indicted on June 13, 2003 with second-degree murder, first-degree manslaughter, and second-degree manslaughter.  Trial began on September 8, 2005.  The State called 38 witnesses; Ortega did not testify, but called five witnesses.  At the close of the evidence, the trial court dismissed the first degree manslaughter charge.  Defense counsel requested that the two remaining counts be dismissed because the evidence "does not prove a prima facie case," and the State had not proven that the defendant committed either of the crimes. Defense counsel did not seek dismissal of the murder charge, however, on the ground that the evidence was legally insufficient to support the element of depraved indifference. The motion was denied.

With respect to the "depraved indifference to human life" element of the second-degree murder count, the trial court charged the jury, inter alia, that it should "decide whether the circumstances surrounding the conduct, when objectively viewed, made the conduct so uncaring, so callous, so dangerous and so inhuman, as to demonstrate an attitude of total and utter disregard" for the victim's life.  As to the mens rea requirement, the jury was instructed that a defendant acts recklessly if he has created a risk and "he is aware of and consciously disregards that risk and . . . that risk is of such nature and degree, that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in that situation."  The trial court further charged that a person may act recklessly if he is unaware of a risk "solely by reason of his or her voluntary intoxication."  Defense counsel did not object to the charge, and on October 7, 2005, the jury convicted Ortega of second degree murder.  Ortega was sentenced on November 3, 2005.

Ortega filed a post-conviction § 440.10 motion asserting that trial counsel was ineffective in that he failed to move at the close of the evidence for dismissal of the murder count on the ground that the evidence was not legally sufficient to establish depraved indifference.  The motion was denied on

December 20, 2006 on procedural grounds and on the merits. People v. Ortega, No. 3024/03 (N.Y. Sup. Ct. Dec. 20, 2006).

Ortega's direct appeal and appeal from the denial of the § 440.10 motion were consolidated. On January 17, 2008, the First Department affirmed the conviction. People v. Ortega, 849 N.Y.S.2d 253, 253 (N.Y. App. Div. 2008). Although it found that Ortega had not preserved his legal insufficiency claim, it held in the alternative that the claim was without merit. Id. at 254. It ruled that the trial court had "charged the jury in accordance with the law at the time." Id. It described the evidence as proving that

> during a violent altercation in an apartment, [Petitioner] beat the victim and pinned her against an open window several times. The window had a poorly fitting screen that was secured by tape and incapable of preventing a person from falling through. At one point, the victim was pushed and went out the window and landed four floors below, causing her death. . . . The evidence supports the inference that . . . [Ortega] callously and wantonly exposed the victim to an extreme risk of death, without intending that outcome.

Id. The Appellate Division also rejected the ineffective assistance claim, citing the standards in Strickland v. Washington, 466 U.S. 668 (1984), and People v. Danielson, 9 N.Y.3d 342 (2007). Ortega, 849 N.Y.S.2d at 254. In Danielson, the Court of Appeals rejected an ineffective assistance of counsel claim where the evidence presented at trial could have supported a depraved indifference murder verdict "under the law

5

at the time of trial." Danielson, 9 N.Y.3d at 350.  The New York Court of Appeals denied leave to appeal on April 14, 2008. People v. Ortega, 10 N.Y.3d 842 (2008).

Ortega's counsel filed this habeas petition on June 18, 2009.  The petition contends that the trial evidence was "legally insufficient" to establish "depraved indifference" and that Ortega's trial counsel was constitutionally ineffective for failing to make that specific objection at trial and to preserve that issue for appeal.  The petition was referred to Magistrate Judge Freeman on July 2, 2009, and she filed her Report recommending denial of the petition on June 15, 2010.  Ortega has objected to the Report.

DISCUSSION

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The court must make a de novo determination of the portions of the report to which petitioner objects.  Id.; see Finkel v. Romanowicz, 577 F.3d 79, 84 n. 7 (2d Cir. 2009) (citation omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, modified the standard under which federal courts review § 2254 petitions where the state court has reached the merits of the federal

6

claim. Habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (d)(2). State court factual findings "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1).

1. New York's Law on Depraved Indifference

Before addressing the merits of this petition, it is useful to describe, albeit briefly, a significant change in New York's law of depraved indifference murder that occurred during the litigation of Ortega's appeal. Following his conviction, but before the First Department rejected his appeal on the merits, New York's highest court changed the standard for depraved indifference murder.

In People v. Register, 60 N.Y.2d 270 (1983), the New York Court of Appeals explained that the depraved indifference to human life element referred to a reckless state of mind and engaging in "conduct which creates a grave risk of death to another person." Id. at 276. Depraved indifference murder was

7

thus distinguished from manslaughter not by its mens rea requirement, but "by the objective circumstances in which the act occurred[,] which defined the degree of risk created by the defendant." Henry v. Ricks, 578 F.3d 134, 139 (2d Cir. 2009) (citation omitted); accord Mannix v. Phillips, Nos. 07-0664-pr; 09-20141-pr, 2010 WL 3387898, at *9 (2d Cir. Aug. 30, 2010). Thus, "the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial evidence of intent -- for example, a point blank shooting of a victim in the head -- likewise demonstrated depraved indifference." Henry, 578 F.3d at 139 (citation omitted).

In People v. Feingold, 7 N.Y.3d 288 (2006), the New York Court of Appeals redefined the culpable mental state for depraved indifference murder. Id. at 294. It held that "a depraved and utterly indifferent actor is someone who does not care if another is injured or killed." Id. at 296 (citation omitted). Thus, depraved indifference murder no longer exists where "the evidence demonstrates the defendant's intent to kill the victim." Henry, 578 F.3d at 138. In other words, depraved indifference murder is now defined as one "in which the defendant does not have a conscious objective to cause death but instead is recklessly indifferent, depravedly so, to whether death occurs." Id. (citation omitted); see also Mannix, 2010 WL 3387898, at *9 (observing that Feingold overturned precedent and

8

"held that depraved indifference to human life is a culpable mental state" (citation omitted)).

The New York Court of Appeals has acknowledged that its jurisprudence in this area has "gradually and perceptibly changed from an objectively determined degree-of-risk standard (the Register formulation) to a mens rea" standard. Policano v. Herbert, 7 N.Y.3d 588, 602-03 (2006).  Nonetheless, it asserts that it adhered to the Register formulation up until the Feingold decision, which explicitly overruled the articulation of the standard for second-degree murder in Register.  Policano, 7 N.Y.3d at 603.

2. Sufficiency of the Evidence

The Report concludes that Ortega's claim that the evidence was insufficient to support his conviction is both procedurally barred and without merit.  In rejecting the claim on the merits, the Report notes that New York law requires that the sufficiency of the evidence be evaluated based upon the jury charge that was given at trial.  The Report recites the jury charge and examines the trial evidence, concluding that the evidence supported a finding that Ortega did not intend to kill Cordell, but created a grave risk of her death such that a rational jury could have found that Ortega acted recklessly and in conscious disregard of a substantial risk of her death.  As a result, the Appellate

Division's rejection of Ortega's legal insufficiency claim was neither contrary to nor an unreasonable application of federal law.

In his first objection to the Report, Ortega argues that the Report failed to address whether there was sufficient evidence that Cordell's death was foreseeable. Ortega emphasizes testimony from the State's expert at trial that he could not come to a conclusion to a reasonable degree of scientific certainty as "to how" Cordell "physically traveled out the window." Ortega asserts that recklessness requires proof that a defendant was aware of and consciously disregarded a substantial and unjustifiable risk of death, and that the evidence was insufficient to establish that fact. Ortega points out that he referred to the lack of evidence regarding foreseeability in his briefs in support of the petition.

"Under the Due Process Clause of the Fifth and Fourteenth Amendments, no conviction may be sustained except upon proof beyond reasonable doubt of every fact necessary to constitute the crime charged." Henry, 578 F.3d at 137 (citation omitted). As a result, a habeas petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. (citation omitted). State law determines the elements of a state crime. Id. at 138.

10

Where the state's highest court determines that a new rule of law applies to the elements of a state crime, and that that new rule does not apply retroactively, a federal court is "not at liberty" to disregard that determination.  Id. at 140 (citation omitted).

Ortega has not shown that the trial evidence failed to establish proof beyond a reasonable doubt as to any element of the crime for which he was convicted.  He does not suggest that there was any error in the charge given to the jury.  Moreover, he has not shown that the Appellate Division erred in affirming his conviction.  In his appeal to the First Department, Ortega argued that his conviction had to be reversed because "he did nothing reckless.  An honest look at the evidence reveals a tragic and freak accident, without recklessness, and nothing more."  The Appellate Division rejected that argument.  After summarizing the trial evidence, the Appellate Division ruled that it showed that Ortega "callously and wantonly exposed the victim to an extreme risk of death, without intending that outcome."  Ortega, 849 N.Y.S.2d at 254.  The trial evidence amply supports that ruling.[1]

---

[1] There is a serious question as to whether Ortega adequately presented to the Appellate Division in his direct appeal the argument on foreseeability that he now presents in his objection.  It may be an unexhausted claim that he is procedurally barred from presenting now.

In a second and related objection to the Report, and relying on a phrase in People v. Sanchez, 98 N.Y.2d 373 (2002), Ortega argues that the evidence was insufficient to establish that Ortega should have foreseen that shoving Cardell was "manifestly destined" to result in her death. Id. at 378. Ortega complains that the Report did not address this issue although he argued this issue in his briefs in support of his petition.

This objection can be swiftly rejected.[2] This objection essentially repeats the point made in the first objection and is denied for the reasons already given.

In a third objection, Ortega argues that the Report erred by failing to decide whether the evidence at trial was sufficient to show that Ortega acted with the mens rea adopted in Feingold, that is with a depraved or wicked state of mind. This objection ignores the Report's description of Feingold and the fact that its ruling is not retroactive. See also Mannix, 2010 WL 3387898, at *11 (observing that the changed meaning of depraved indifference announced in Feingold does not apply retroactively). In any event, the objection misses the mark. While Feingold represents a change in New York's law of depraved indifference murder, it is a change that has little or no effect

---

[2] Ortega did not even cite the Sanchez decision in his brief to the Appellate Division.

on Ortega's conviction.  As explained by the Appellate Division in its affirmance of the conviction, the evidence at trial was sufficient to establish that Ortega had acted "callously and wantonly exposed the victim to an extreme risk of death, without intending that outcome."  Ortega, 849 N.Y.S.2d at 254.  Thus, the evidence at trial was sufficient to convict Ortega under either the Register or Feingold standard.[3]  The change in the law effected by Feingold was not a change that affected the validity of Ortega's conviction.

---

[3] This conclusion also disposes of the objection raised in Ortega's September 21, 2010 letter to the Court.  There, Ortega contends that the Report incorrectly found that he must produce new evidence of his innocence in order to invoke the "fundamental miscarriage of justice" grounds for overcoming the procedural default bar to reaching the merits of his sufficiency claim.  Ortega bases this argument on a recent district court opinion, Petronio v. Walsh, No. 09-CV-341, 2010 WL 3564269 (E.D.N.Y. Sept. 14, 2010).

In Petronio, the court held that even though the petitioner did not offer new evidence in support of his innocence, the court was obligated to overlook his procedural default since "no reasonable juror could have convicted Petronio of depraved indifference murder under the Payne, Suarez, Feingold formulation."  Id. at *15.  Thus, "Petronio [was] factually innocent of the charge for which he was convicted and it would therefore be a miscarriage of justice to sidestep the merits of his claim on habeas review."  Id.  This Court need not assess whether the Petronio court's description of what constitutes a "fundamental miscarriage of justice" is sound since this Opinion addresses Ortega's claim on the merits and, for the reasons discussed above, Ortega cannot establish his "actual innocence": A reasonable jury could have convicted him of depraved indifference murder as that crime is defined in either Register or Feingold.

3.  Ineffective Assistance of Counsel

The Report concluded that the Appellate Division was not objectively unreasonable in rejecting Ortega's Sixth Amendment <u>Strickland</u> claim since there was no reasonable probability that the trial judge would have granted a motion to dismiss the murder count if defense counsel had specifically objected to the insufficiency of the evidence to show depraved indifference at the close of the evidence.  Since the elements of the crime of depraved indifference were still those defined by <u>Register</u>, the trial court would have rejected such a motion had it been made.  Indeed, in denying the § 440.10 motion, the trial court itself indicated that it would have denied the motion if it had been made at trial.

Ortega contends that the Report erred in finding that there was an independent state basis for the appellate court to reject the <u>Strickland</u> claim, and that the state procedural bar precludes review through a federal habeas petition.  Ortega points out that there are certain constitutional exceptions to the independent state basis bar.

The Report did discuss the existence of a procedural bar in addressing the sufficiency of the evidence claim.  It did not, however, reject the ineffective assistance of counsel claim based on a procedural bar.  Therefore, Ortega's objection does not identify any error in the Report's rejection of the Sixth

14

Amendment claim.  Having reviewed the Report's analysis, and finding no error in it, for the reasons stated in the Report, the Sixth Amendment claim is denied.

CONCLUSION

The June 18, 2009 petition for a writ of habeas corpus is denied.

SO ORDERED:

Dated:    New York, New York
          October 8, 2010

                                     _____
                                          DENISE COTE
                                     United States District Judge

15